No. 13,409.

E. H. CHADWICK vs. MENARD BROTHERS.

### SYLLABUS.

By Statute enacted in 1856, relative to rate of interest, only the "owner" or "discounter" was authorized to capitalize interest at more than 8 per cent. This statute was interpreted to refer only to the discount of notes, bonds, and other similar paper.

By Act of 1860, also relative to the rate of interest, the "owner" is permitted to exact a larger rate of interest than 8 per cent. when the interest is capitalized; and, in construing the statute, the rate was not limited to the "discounter." The statute includes "owner" as well as "discounter." Bank vs. Regan, 40th A. 17.

The prescription of twelve months, when pleaded, is a bar to an action for the repetition of usurious interest.

### ON REHEARING.

Delay of payment of a loan, obtained for a price in excess of conventional rate of interest, is held to be without legal consideration, it not being a part of a written agreement covering principal and interest capitalized.

I N RE Menard Brothers Applying for *Certiorari* or Writ of Review to the Court of Appeals, Parish of Orleans, State of Louisiana.

*Bernard Titche* and *Bernard I. Cahn* for Petitioners.

*Benjamin Ory* for Respondent, Chadwick.

The opinion of the court was delivered by

BREAUX, J.  The defendants, Menard Brothers, seek to have a judgment, originally rendered by the City Court, and affirmed on appeal to the Court of Appeal, decreed illegal.  The said judgment condemns them, they aver, to pay excessive charges of interest.

The statement of facts, agreed to by plaintiff, Chadwick, and defendants, Menard Brothers, shows that five suits were instituted against the latter in the Fourth City Court of New Orleans on as many promissory notes on which plaintiff secured judgment, which was affirmed on appeal to the Court of Appeal.

It appears, by this statement, that the notes sued on represent balances due after settlement at maturity of the notes given by the defendants.  At these settlements, made when the notes became due, "the old ones were returned and new ones taken therefor and interest was calculated for the terms of the new notes, at the rate of two or three per cent. per month.  This interest was paid either by check or with cash at the time when the new notes were given."  The claim would be nearly all liquidated by the amount paid for asserted usurious interest if the court were to allow the repetition for which relator sues.  Defendants pleaded usury in bar of the recovery of plaintiff, to which plaintiff, Chadwick, pleaded the prescription of one year.

Article 2895 of the Code of 1825 limited the maximum of conventional interest to ten per cent.  The rate of interest was absolutely limited to that percentage, and interest in no way could be charged above that amount, and recovery of the principal was rendered difficult, if the rate stipulated was in excess of the ten per cent.  Subsequent legislation limited the nullity growing out of usurious interest to the agreement for interest only and shielded the contract from attack on the ground of nullity, and the rate of interest was limited to eight per cent.  Act 25 of 1844, p. 14.  From the date just mentioned, the Legislature, at different times, gave the subject of interest some attention, which resulted in the enactment of several statutes in relation thereto.  We are principally concerned with the interpretation of the act passed in 1856, and, afterwards, incorporated in R. C. C. 2924.  It reads: "The owner or

discounter of any note or bond, or other written evidence of debt for the payment of money, payable to order or bearer or by assignment, shall have the right to claim and receive the full amount of such note, bond, or other written evidence of debt, and all interest not beyond eight per. cent. *per annum,* notwithstanding that the rate of interest or discount at which the same may be, or may have been discounted, has been beyond the rate of eight per cent. *per annum;* but this provision shall not apply to the banking institutions of this State in operation under existing laws."

This article was interpreted in Crane vs. Beatty, 15th Ann. 329, the court holding that the law had in view the *sale* of notes for the purpose of raising money, and that the words, interest or discount, used in the body of the act expressed the same idea. The court said, in substance, that the provisions of the act could not be extended so as to authorize and legalize *all* transactions between debtors and creditors wherein usurious interest is added to the sum really due (or capitalized), as a consideration for an extension of time, or for the indulgence of the creditor.

This decision was rendered in 1860. The same year the Legislature enacted another statute upon the subject of interest, which we judge was not considered at all by the court, in the 15th Annual case, as the claim passed upon was of a date long anterior to the passing of the statute just referred to, besides, the decision in question only refers to the Act of 1856.

The last statute provides that the *owner* of any promissory note, to *order* or *bearer,* shall have the right to collect it, although it includes a *greater rate* of interest or *discount* than eight per cent. *per annum,* provided that such obligations shall not bear a greater rate of interest than eight per cent. after maturity.

The interpretation of the statute relative to interest came up again in 1888, in which year, in Bank vs. Regan, 40th Ann. 17, the court said: "Plaintiff appeals and complains in court that McCan's mortgage should be further reduced by the amount of the usurious interest charged by McCan in the transaction. We do not see how this relief could be granted unless we should strike out Article 2924 of the Civil Code." The court, in the case from which we have just quoted, gave the following as the meaning of the statute, viz: The *owner* of a note, though it contain a *greater rate of interest* than eight per cent. *per*

*annum,* "provided such obligations shall not bear more than eight per cent. *per annum* after maturity" shall be paid. The court, in that case, must have determined that the difference in the text of the statute of 1856, and that of the statute of 1860, justified a different conclusion from that arrived at in the case from which we quoted *supra, i. e.,* Crane vs. Beatty, 15th Ann. 329. This latter interpretation has been followed in other decisions.

In Heirs of Williams vs. Sheriff, 47th Ann. 1285, the court said: "In the condition of our law and jurisprudence, it would serve no useful purpose to discuss the right of a mortgagor and borrower to contract for the payment of a greater rate of interest than eight per cent., provided it be capitalized and carried into the obligation," citing R. C. C. 2924; Carruth vs. Carter, 26th Ann. 331; Martin vs. Sheriff, 37th Ann. 766; Bank vs. Regan, 40th Ann. 17; American Homestead Co. vs. Linigan, 46th Ann. 1119.

Again, in the matter of Leeds & Co. in Liquidation, 49th Ann. 509, the court said: "This was in the nature of an allowance of a higher rate than that of legal interest as a consideration for an extension of time for the payment of the principal, which is not considered usurious," citing Foster vs. Wise, 27th Ann. 538. In this case a decision on the point was absolutely necessary in disposing of the question, and the meaning of the text is clear enough.

We understand the relator as conceding that the demand of a greater rate of discount than eight per cent. is permissible; but he contends, his client having paid cash for the extension, that his case does not fall within the permission of the statute just stated, for the reason, he argues, that there is a difference between the cash payment of illegal interest and its inclusion in the note as part of the sum loaned; in other words, its capitalization. In a business sense, the difference between a promise to pay, which is included in the note, and the cash payment, amounts to very little, if anything. The consideration is the same, save that in the one case it is paid, and in the other it is to be paid. If the amount can be inserted in the note, and hold good as part of the note, it can as well be paid in cash. Where the transaction shows that cash was paid, representing the usurious interest, we think it as much protected in principle as the promise to pay which is capitalized and converted into an equivalent to cash. Both are, in reality, payments, one in cash and the other by converting a promise to pay into the

equivalent of cash. After having approved, as legal, the promise to pay interest, as capitalized, there would be scant ground left to condemn, as usurious, the cash payments to the creditor instead.

Another question arises, upon which we specially rest our conclusion, even more serious and presenting greater obstacles to defendant's plea of usury. More than twelve months have elapsed, and plaintiff interposes the prescription of one year as a bar.

In Walker vs. Villavaso, 18th Ann. 715, a case in point, the *syllabus* clearly sets out the principles laid down in the decision. A party, as in the case before us, paid a certain sum to obtain the extension of several notes. The court held that this payment could not be pleaded in satisfaction of the notes, and that the sum paid for delay was separate from the notes. The question was considered and passed upon in Boeto vs. Laine, 3rd Ann. 142, and in Cox vs. McIntyre, 6th Ann. 470. The court held that "sums distinctly paid as interest cannot now be recovered back, or imputed to the capital after the lapse of twelve months." This position finds strong support in Perrillat vs. Puech, 2nd La. 421, in which it was held that money paid on an usurious contract could not be recovered back.

The right of the lender to compensation from the borrower for the loan made him dates from the earliest times. The rate has frequently given rise to discussion and legislation. It may be that it would be well to establish a maximum rate and not allow capitalization, but these are questions for the Legislature and not the courts to decide. Our predecessors have interpreted the will of the Legislature relative to the rate which can be charged and the time within which usurious interest can be recovered.

We have found no good reason to change that interpretation, and, therefore, the application made for a writ of *certiorari,* or writ of review to the Court of Appeal, is refused, the demand of the relator is rejected, and the rule *nisi,* heretofore issued by this court, in this case, is recalled and discharged, at relator's costs.

MONROE, J., I concur in the decree.

## ON REHEARING.

BREAUX, J. Defendant complains of the decree in this case and says that it is admitted that the sums of twelve and 60-100 dollars, of three and 20-100 dollars, of two and 80-100 dollars, and four dollars have been

paid as usurious interest on the notes in suits Nos. 2075, 1914, 1915, 1916, within the year preceding the institution of suits therein. These sums aggregate *twenty-two and* 60-100 dollars.

These amounts were paid within the year preceding the institution of said suits, and, in consequence, do not fall within the rule of prescription sustained in our original decree. The writer and organ of the court adheres to the view expressed in the opinion upon this point; that is, that there is in reality no difference between payment in cash of usurious interest for the extension of a note and the capitalization of usurious interest in the note.

The majority of the court having concluded that *bonus* for an extension of time on a loan could not be recovered by the lender when in excess of the conventional rate, the decree is, accordingly, amended.

The majority holds that the hire of money is excessive and usurious, if not included within the terms of the statute, usually adopted to cover an excess over the conventional rate; that usury is against public policy and that excessive rates of interest agreed upon are not to be sanctioned unless they fall within the express provisions of the law; that interest not capitalized, in excess of the conventional rate, for the extension of the payment of a loan is not considered legal consideration.

It is, therefore, ordered, adjudged and decreed that the judgment rendered by the Fourth City Court, and that rendered by the Court of Appeal for the Parish of Orleans, in this cause, be amended by allowing defendant a credit of twenty-two and 60-100 dollars ($22.60) (in different amounts as before stated) on the respective amounts of plaintiff's claim, to be credited from the date that the foregoing stated amounts were paid by defendants to the plaintiffs (*i. e.,* each amount of plaintiffs' claim is to be credited with the sum paid, for the time obtained for its payment as admitted), and that, as amended, the said judgment is affirmed; plaintiff to pay the costs in the Court of Appeal, and in this court.