274 So.2d 150 (1973)
THRIFT FUNDS OF BATON ROUGE, INC., Plaintiff-Appellee-Respondent,
v.
Charlie JONES, Defendant-Appellant-Applicant.
No. 52065.
Supreme Court of Louisiana.
February 19, 1973.
Rehearing Denied March 26, 1973.
*151 Laycock & Stewart, Ashton L. Stewart, Baton Rouge, for defendant-applicant.
Covert & Brantley, George R. Covert, Baton Rouge, for plaintiff-respondent.
Sanders, Miller, Downing & Kean, Robert A. Hawthorne, Jr., Baton Rouge, for amicus curiae.
TATE, Justice.
The principal issue concerns to what extent, if any, does the exaction of usurious interest by a lender forfeit not only the conventional interest expressed on the note but also the capitalized interest included within its face amount.
The plaintiff ("Thrift Funds") sues upon a promissory note. The maker Jones defends on the ground that the obligation is void as usurious and, in addition, he reconvenes to recover damages and attorney's fees. The court of appeal allowed Thrift Funds' recovery based on the face amount of the note. In so doing, it reversed the trial court, which had disallowed the capitalized interest included therein on the ground that the lender had exacted additional usurious interest. 259 So.2d 587 (La.App.1st Cir. 1971). Upon the defendant Jones' application, we granted certiorari. 261 La. 451, 259 So.2d 910 (1972).
The gravamen of the defendant Jones' complaint is this: The court of appeal sustained the plaintiff finance company's claim that he still owes it $1144.66, plus interest *152 and 25% attorney's fees, as of March 17, 1970, even though he has made payments of $815.10 since borrowing $650 on May 9, 1967, less than three years before, and $100 on October 22, 1969, five months before. The crux of his contention is that the bulk, if not all, of the present balance claimed due is composed of usurious interest sought to be collected from him in violation of Louisiana statutory law.
Facts
The factual context of this litigation is fully set forth by the court of appeal opinion. In summary, this shows:
Thrift Funds was licensed to do business under the former Louisiana Small Loan Law, La.R.S. 6:571-93 (1950).[1] This enactment regulated loans made at an interest rate in excess of the normal maximum conventional rate[2] and permitted licensees to make them at the greater rates prescribed by such small-loan law.[3]
Jones, a black man aged 83 years, needed $650 to pay a plumbing bill when required by law to connect his house to the city sewerage system. He applied to the plaintiff lender for a loan, this being his first from a finance company. He received his loan, signing a note in 1967 in the face amount of $1152 payable in 48 installments of $24 each. In addition to the $650 loan and $50 closing costs to "his" attorney,[4] the note also included $452 capitalized interest or discount.[5] The note also provided for 8% per annum interest on each monthly installment from maturity until paid.
Between May 9, 19677 and October 18, 1969, Jones had made 28 payments of $24 each (i. e., $672), plus a $10.00 "extension fee" to secure an extension for a missed installment. He thus paid a total of $682.00. The total balance due by finance company records was still $522, since Thrift Funds had deducted a total of $49.20 late charges from the installment payments made. (See below.) Jones's note was fully current as of October 18, 1969.
On that date, Jones needed an additional $100 for a plumbing bill. He applied to Thrift Funds for this sum. Thrift Funds loaned him the $100, "refinancing" the balance of $522 its records showed due on the prior $1152 note, which was then cancelled. Jones received his $100, in return for which he signed a new note dated October 22, 1969 in the amount of $1277.76 (payable in 48 installments of $26.62 each).
This face amount was arrived at as follows: $100 for the new loan; $7 recordation and cancellation charges; $522, balance of old note extinguished: total, $627 financed ($2.00 error in addition); plus finance charges of $650.76, calculated at the rate of 41% per annum. The note bore interest at the rate of 8% per annum on any unpaid balance, commencing at maturity (November 20, 1973) of the note.
*153 On this new note Jones paid five installments of $26.62 each prior to retaining an attorney and making no further payments. These installments were due on the 20th of the month. Since four of them were paid on the 3rd and 4th of the following month, "default charges" of $2.66 (10% of the installment due) were exacted for such payments delinquent by 15 days, i. e., at the rate of 240% per annum upon each delinquent installment. These "default" charges were exacted by virtue of a condition printed on the "loan disclosure statement."[6] Questioning the charges, Jones retained an attorney and paid no further installments.
The "late charges" for the delinquent installments upon the first of 1967 note of $1152 also form a principal basis for the defendant Jones' charge of usury. We will therefore discuss them in detail.
The payments on the 1967 note were due on the 10th of each month. Presumably pursuant to a condition stamped on the face of the payment book,[7] the lender subtracted a "late charge"[8] on 23 of the 28 installment payments, totalling $49.20, additionally charging a $10 "extension fee".[9]
It will be remembered that the note itself only authorized 8% per annum on each installment overdue after its maturity, or 16 cents per month, as contrasted with the $1.20 to $3.60 late charges thus exacted. This is without reference to the circumstance that each installment included capitalized interest and to the prohibition by Civil Code Article 1939 of charging interest upon interest.
The "Late" or "Default" Charges as Usurious Interest
Both the trial and intermediate courts correctly held that the exaction of the "late" or "default" charges constituted usury prohibited by Louisiana law. They disagreed, however, as to the consequences of such usury. In our view, in order to determine the consequences it is necessary to review once again the legal reasons why such delinquency charges constituted the exaction of usurious interest.
At least the 1967 note (and, Thrift Funds claims, also the 1969 note) was exempt from the Louisiana Small Loans Law, because this statute regulated only loans of $300 or less. La.R.S. 6:585 (1952). Because of this, the maximum interest on it chargeable is regulated by Civil Code Article 2924 (1870; amended in 1908)[10].
*154 (The 1970 and 1972 amendments do not affect the provisions applicable to the 1969 note.[11]
Paragraph 4 of this code article (see footnote) provides that "The amount of conventional interest cannot exceed eight per cent." However, paragraphs 6 and 7 provide exceptions relevant to decision of the present issues.
These paragraphs permit recovery of the face amount of a note even if by reason of a discount the eight per cent maximum is exceeded (paragraph 6) or even if the capitalized interest included within the face amount is at a greater rate than eight per cent, "provided such obligation shall not bear more than eight per cent per annum after maturity until paid" (paragraph 7). (Italics ours.)
In Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960), we had occasion to review the statutory and jurisprudential history of these two provisions.
Paragraph 6 we declared limited to its legislative purpose of facilitating the sale of discounted notes to raise money, thus limiting it to protection of commercial discountingthe sale of already existing paper at a discount, see Note, 35 Tul.L.Rev. 276 (1960). 121 So.2d 69-70. We held paragraph 6 inapplicable to transactions such as the present, where the capitalized interest is included within the face amount of the note.
These latter transactions are governed instead by Paragraph 7, which permits recovery of capitalized interest (without limit as to amount) included within the face amount of such obligation, provided (Article 2924) "such obligation shall not bear more than eight per cent per annum after maturity until paid" (Italics ours). See: General Securities Company v. Jumonville, *155 216 La. 681, 44 So.2d 702 (1950); Huntington v. Westerfield, 119 La. 615, 44 So. 317 (1907); Chadwick v. Menard, 104 La. 38, 28 So. 933 (1900) (review of statutory history); Walker v. Villavaso, 18 La.Ann. 712 (1866); Tarver v. Winn, 18 La.Ann. 557 (1866). See also (summarizing jurisprudence critically): Meadow Brook National Bank v. Recile, 302 F.Supp. 62, 75-76 (D.C.1969) (excellent jurisprudential history), Noted, 44 Tul.L.Rev. 832 (1970); Cazales, Usury Law in Louisiana, 14 Loyola L.Rev. 301 (1969); Comment, 39 Tul. L.Rev. 328 (1965); Comment, 5 Tul.L.Rev. 211 (1931); Note, 29 La.L.Rev. 562 (1969).
In Mayfield, the $15,000 note included, in rounded figure, a $5,000 bonus capitalized within the face amount, as well as a stipulation for 8% interest from the date on the face amount of the note. The creditor was attempting to recover both the capitalized "bonus" of $5,000 and the stipulated 8% interest from date. This court rejected such claim, finding that the "bonus" or "discount" amounted to capitalized interest, so that the attempt of the creditor to collect such amounts was in violation of Paragraph 7 of Civil Code Articles 2924 (which permits recovery of conventional interest in excess of 8% when capitalized and included within the face amount of an obligation, providing such obligation does not bear more than 8% interest "after maturity") and 1939 (which prohibits recovery of interest on interest unless "added to the principal, and by another contract made a new debt").
Under the Mayfield rationale, in the instant case the "default" or "late" charges of both the 1967 and the 1969 notes were illegally usurious exactions of interest charges for the delayed payment of money in violation of Civil Code Articles 2924 and 1939.
These charges are clearly "interest" as defined by Civil Code Article 1935: "The damages due for delay in the performance of an obligation to pay money are called interest." They are just as clearly illegal and usurious interest, because collected at a rate far in excess of the 8% per annum from "maturity" alone authorized by Article 2924, whenever capitalized interest exceeding the maximum eight per cent is included in the face amount of an obligation as authorized by Paragraph 7.
Such delinquency charges under similar circumstances have been characterized as illegal and usurious by every Louisiana court considering the issue in modern times. See, e. g., Chadwick v. Menard, 104 La. 38, 42, 28 So. 933 (1900) (on rehearing); Gordon Finance Company v. Chambliss, 236 So.2d 533 (La.App.4th Cir. 1970), certiorari denied 256 La. 869, 239 So.2d 364 (1970); Lawrence v. Durr, 195 So.2d 337 (La.App.4th Cir. 1967); Consolidated Loans v. Smith, 190 So.2d 522, (La.App.1st Cir. 1966), certiorari denied 249 La. 753, 190 So.2d 913 (1966); Berger v. DeSalvo, 156 So.2d 323 (La.App.4th Cir. 1963), certiorari denied 245 La. 86, 157 So.2d 231 (1963).
Forfeiture Penalty for Illegal Exaction of Usurious Interest: Entire Interest or Only Usurious Portion?
La.R.S. 9:3501 (1950) flatly provides: "Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted."
Both the trial and the intermediate court held that the unambiguous meaning of the statute is to cause the forfeiture of all interest due on the contract, not just the usurious portion of it and not just during the period that usurious charges were exacted. They were correct in so doing.
As the court of appeal noted, the past jurisprudence is in conflict. However, upon examination, the decisions which only disallowed the usurious portion of the interest *156 are not persuasive or controlling.[12] As the decision notes, the more considered and the more recent decisions have enforced the unambiguous language of the statute that all interest due under the contract is forfeited when usurious charges are exacted, in the light of the statute's intent to penalize usurious creditors and to protect borrowers. Crane v. Beatty, 15 La.Ann. 329 (1860); Miley v. Steedley, 269 So.2d 522 (La.App.1st Cir. 1972); Busada v. Goeders, 236 So.2d 669 (La.App. 2d Cir. 1970); Gordon Finance Company v. Chambliss, 236 So.2d 533 (La.App.4th Cir. 1970), certiorari denied 256 La. 869, 239 So.2d 364 (1970); Consolidated Loans, Inc. v. Smith, 190 So.2d 522 (La.App.1st Cir. 1966), certiorari denied 249 La. 753, 190 So.2d 913 (1966).
Having so concluded, we must nevertheless note that the plaintiff Thrift Funds reminds us that in Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960), the language of the court (the holding reversed a dismissal on an exception of no cause of action) indicated that, although the usurious interest was disallowed (i. e., the 8% from date provided on the face of the note), the debtor's payments previously made were to be applied to the $15,000 face amount (which included capitalized interest or discount of $5,000). This allegedly indicates that, when remanded for trial, only the additional usurious interest was to be forfeited, not the capitalized interest.
Nevertheless, as the court of appeal noted in Gordon Finance Company v. Chambliss, at 236 So.2d 535 cited above, the Mayfield decision did not cite or otherwise take into consideration the mandatory prohibition of La.R.S. 9:3501 that the "entire interest" shall be forfeited when a contract exacts interest in excess of that authorized by law. We do not regard this decision as authority for refusing to apply the unambiguous provisions of La.R.S. 9:3501, since it did not discuss or notice the statute's possible application.
Forfeiture Penalty: What is the "Entire" Interest?
Both the trial and the intermediate court construed La.R.S. 9:3501 as requiring forfeiture of the "entire" interest due on the contract. They differed as to just what was the interest to be forfeited.
The court of appeal held that only the portion of the 1969 note expressly stipulated to be interest (8% from maturity in 1973) was forfeited. It therefore disallowed only such interest, providing instead for legal interest (at 5%) upon the full amount of the note from the 1970 date of demand.
The trial court, to the contrary, reasoned that the "entire" interest forfeited was not only the stipulated 8% interest and the usurious default or extension charges, but *157 also the capitalized interest included within the face amount of the 1969 note. This note, in the amount of $1277.76, included capitalized interest of $650.76. The trial court therefore held that Thrift Funds could recover only the $627[13] advanced, less the $133.10 paid by the debtor, for a net amount of $493.10, plus the 25% attorney's fees as provided by the note. No interest whatsoever was allowed.
Pretermitting (for the moment) the defendant Jones' further contention that the 1969 note itself is void as violative of the Small Loan Law, the trial court's resolution of this particular issue is correct. The charges for use of the moneywhether denoted as interest, whether capitalized within the face amount of the note, or whether denoted as an "extension" or "late" chargeare all "interest" for purposes of determining whether a note is usurious under Civil Code Article 2924. See jurisprudence cited above.
For instance, in Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960), see p. 70, the reason why the forfeited interest of 8% from date was usurious was because it was exacted upon an obligation which also included capitalized interest. It thus violated the prohibition of Civil Code Article 1939 that, except in the case of an instrument bearing interest from maturity, interest cannot be charged upon interest. That is, the discount or capitalized interest included within the face amount of the note was as much "interest" as the stipulated 8% interest.
We conclude, therefore, that, when (as here) illegally usurious interest is exacted by virtue of a contractual arrangement, La.R.S. 9:3501 requires the forfeiture of all interest under the contract, whether such be stipulated interest, capitalized interest, or other charges for the use of or the delay in paying money, howsoever denoted. We are reenforced in this belief by the proviso to Civil Code Article 2924 provided by the Paragraph 8: "Provided however where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence." See footnote 10 above.
Did the 1969 note violate the Louisiana Small Loan Law?
The defendant Jones, however, had appealed from the judgment of the trial court reducing the balance due on the 1969 note to the net principal due, further disallowing any interest. (The trial court judgment had further reserved him the right to sue and recover usurious payments exacted under the 1967 note.) Jones did so on the basis of his further contention that the 1969 note itself is entirely void under the Louisiana Small Loan Law, a contention he re-urges in his application for certiorari which was granted.
The Louisiana Small Loan Law, La.R.S. 6:571-93 (1950), in effect at the time of the 1967 and 1969 transactions, regulated loans in the amount of three hundred dollars or less. La.R.S. 6:572, 583, 585. It provided for maximum rates of 42% per annum (actually 3½ per month) on the first $150 and of 30% per annum (actually 2½% per month) on the next $150-$300 loaned. La.R.S. 6:583. The stringent penalty provided for charges in excess of this statutory maximum was that "the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatever." La.R.S. 6:583.
Both the trial and the intermediate courts considered the 1969 note sued upon as not regulated by the Small Loans Law. They did so because, in addition to the net $105 received, the consideration for the $1277.76 note also included the $522 balance due on the 1967 note (which, as will *158 be remembered, included both unpaid principal and unpaid capitalized interest), thus amounting to a loan of $622 and (if so) exempted from the protection of the enactment.
The defendant Jones argues, however, that he did not receive more than $300 that he only received the $100 new cash loan, $7.00 recordation charges, and (since the capitalized interest on the first note was forfeited due to the usurious charges) the $87.66 of principal amount still owing on the 1967 note; a total of only $194.66, well within the $300 limit of loans regulated by the statute.
Neither the trial nor the intermediate court agreed with Jones' contention. In rejecting it, they relied upon this court's decision in Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (1956), which summarizes the jurisprudence under Civil Code Article 2924 as holding "that where interest and principal is capitalized in a new note, even though the interest included was usurious, recovery could be had in full on the note." 87 So.2d 716[14]. We pretermit consideration of the defendant Jones' questioning that this was the actual holding of the case[15], because we do not find this decision or those it relies upon as controlling in the present litigation: Vosbein and the decisions it cites did not, as does the present case, concern a loan governed by the Small Loan Law, since the amounts loaned were far in excess of $300 and not even arguably within the regulation of this enactment.
In determining whether this loan by a lender licensed to do business under the Small Loan Law was regulated by this enactment, we must first look to its statutory provisions. La.R.S. 6:585 (1952), in effect at the time of the 1969 transaction, provides with specific reference to the present situation: "* * * any new cash advance of three hundred dollars or less may be combined with any existing loan or debt of any amount, whether or not originally made under this [Small-Loan] Chapter, and if the consideration of the combined resulting loan or debt exceeds three hundred dollars, such loan shall not be subject to the provision of this Chapter." (Italics ours.)
In the present case, the $107 newly advanced was combined with the balance due under the 1967 note, which was extinguished by novation, Civil Code Articles 2185, 2187, 2189, Sheeks v. McCain-Richards, Inc., 226 La. 578, 76 So.2d 892 (1954), by the issuance of the 1969 debt combining the new debt of $107 with the balance due on the 1967 note. However, under the act, the balance due ("the loan or debt") on the old note (which with the "new cash advance" forms the "consideration") is to be valued before the new note's execution.
For purposes of determining whether the Small Loan Law applies, we must first *159 find the value of the "new cash advance" and of the "existing loan or debt" before the new note is executed. That is, the issue is not, as in Vosbein v. Leopold, simply to what extent may a note regulated only by Civil Code Article 2924 incorporate usurious interest with a new advance?; for Vosbein v. Leopold and the related decisions concerned cash advances not even arguably within the regulation of the Small Loan Law.
In the present instance, the "debt" or the balance due on the 1967 "loan" could not, for the reasons already elaborated, include capitalized or other interest, for all such interest charges were forfeited under La.R.S. 9:3501, by virtue of the exaction of the usurious "late" charges. Had, for instance, Thrift Funds sued on this 1967 note, all such interest charges would have been disallowed as forming no part of the loan or debt due.
Therefore (using the terminology of La. R.S. 6:585 above quoted), in valuing the "debt" due on the 1967 "loan" immediately prior to the execution of the 1969 note (for which it, along with the $107 "new cash advance", formed the "consideration"), we must exclude all capitalized and other interest charges. Doing so, we calculate the value of the 1967 "loan or debt" as follows:
The 1967 note of $1152 included $700 cash and $452 capitalized interest. The date of the note was May 9, 1967, and the first usurious charge was exacted on September 20, 1967, four months and 11 days laterfollowing which, at least, all interest charges were forfeited.[16] The charges of $452 for four years' use of $700 on a descending balance amounts to interest at the rate of 321/3% per annum, at which rate the interest for four months and 11 days amounts to not more than $85. (Or, assuming most favorably to the creditor an annual rate of 42%, the interest chargeable for the period prior to the usury amounts to not more than $110.)
Thus, deducting (at the most) the $110 interest charges from the debtor's total $682 payments upon the 1967 note, we arrive at net payments made by him of $572. When applied to the original $700 principal, these payments left, at the most, a balance due of $128 owed on the 1967 "loan or debt."
In summary, the total consideration received by Jones for execution of the 1969 note was, at the most, $235i. e., $107 new cash advance, plus $128 as the value of the existing 1967 loan or debt. This amount being under $300, the 1969 loan was subject to the Small Loan Law.
The exaction of finance charges of $650.76 is clearly far in excess of the maximum rates allowed by Small Loan Law for debts of this amount. Therefore, the 1969 contract of loan is void, and the lender cannot collect any principal, interest or charges whatsoever. La.R.S. 6:583.
We should note that, if usurious charges had not invalidated the capitalized interest on the 1967 note, then the value of the "loan" or "debt" would be the face amount due upon the pre-existing debt. Such a construction affords protection to the Small-Loan licensee who exacts only legal charges, but it penalizes those who engage in illegal usury, as intended by La.R.S. 6:583.
Before concluding discussion of this issue, we should refer to two contentions of the creditor:
(1) The creditor argues that, if the debtor had actually paid in cash the note including the usurious interest, he could *160 not sue to recover it back. He then argues that the voluntary novation of the former debt amounts to a voluntary payment so as to bring it within the rule argued for.[17]
However, Commonwealth Finance Company v. Livingston, 12 So.2d 44 (La. App.Orl.1943), the decision relied upon, does not support this conclusion. After full discussion of pertinent jurisprudential authority, no recovery at all was allowed on the Small-Loan note sued upon, which included both a new cash advance and the balance of a prior note refinanced by the second note. One reason for the disallowance of any recovery at all on the note was because the second note provided for interest upon the illegal interest included in the balance due on the first note. 12 So.2d 46, syllabus 2. The decision rejecting the main demand thus supports the conclusion here reached that no recovery may be had under the Small Loan Law for a note on which usurious charges are made by reason of inclusion of illegal interest charges due on a prior note within the face amount of the second note.[18]
(2) In the court of appeal, Thrift Funds contended in brief that the debtor Jones could not attack as usurious payments on the 1967 note which had been made more than two years before the 1970 suit. This argument apparently relies upon Paragraph 5 of Civil Code Article 2924 (see footnote 10), which provides: "Except in the cases herein provided, if any persons shall pay on any contract a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered within two years from the time of such payment."
This paragraph provides a prescription against actions to recover a monied judgment for usury paid. It is not applicable to the present situation, where usury is pleaded as a defense to a claim for a monied judgment connected therewith. La.Code Civ.P. Art. 424 provides: "A person who has a right to enforce an obligation also has a right to use his cause of action as a defense. A prescribed obligation may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff."[19] Furthermore, Paragraph 8 of Code Article 2924 (see Footnote 10) adds the proviso that "where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the *161 defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence." See Miley v. Steedley, 269 So.2d 522 (La.App. 1st Cir. 1972).
For the reasons assigned, the plaintiff's principal demand seeking recovery on the note will be dismissed.
The Defendant's Reconventional Demand.
Also brought before us by the certiorari granted is the defendant Jones' reconventional demand.
The reconventional demand is founded upon the federal Consumer Protection Act, commonly known as the "Truth in Lending" statute, effective May 29, 1968, 15 U. S.C. § 1601 et seq. By this demand, Jones seeks recovery of $1,000 penalties and $1,500 attorney's fees for the lender's failure to make a truthful disclosure of the amount financed and of the amount of the finance charges in the 1969 transaction. Section 1640(a).
The lender Thrift Funds did furnish a statement to the borrower Jones before credit was advanced, as required by such statute. Sections 1631, 1639. In purported compliance with Section 1639(a), subsections (3), (4), and (5) respectively, the disclosure statement noted (a) the amount financed as $627 (i.e., the $522 balance on the old note, plus the $107 cash advance, there being a $2 error in addition), (b) the finance charges as $650.76, and (c) the annual percentage rate as 41%.
The cause of action is essentially based upon Thrift Funds basing its information upon the balance due on the old note being $522 instead of the $128 actually due (after omitting any capitalized interest, forfeited because of the usurious delinquency charges). This information was furnished to the debtor before the credit was extended, as required by Section 1639(b).
In view of the uncertain and even conflicting interpretations of Louisiana law on the issue at the time the disclosure statement was furnished, we do not find any bad faith or fraudulent or even careless attempt to misinform the debtor by furnishing the information on the basis that the credit extended (and the amount of finance charges and the annual rate) should be calculated upon the balance of $522 allegedly due on the note, without deducting therefrom the capitalized interest forfeited because of the usurious delinquency charges.
Under the present circumstances, we are unwilling to hold that a bona fide misinterpretation of lawwhere the creditor in fact furnished accurate data based upon such reasonable misinterpretation amounts to an intentional violation of the disclosure requirements. Under Section 1640(c) "A creditor may not be held liable [for the civil penalties for false disclosure]... if the creditor shows ... that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."
Accordingly, we find no error in the dismissal of the defendant's reconventional demand.
Decree
For the reasons assigned, the judgments of the court of appeal and of the district court are affirmed insofar as they dismissed the defendant's reconventional demand, but they are reversed in permitting recovery on the promissory note sued upon in the plaintiff's demand; the plaintiff's suit is dismissed, with plaintiff to pay all costs of these proceedings.
Affirmed in part; reversed in part.
NOTES
[1] This law was repealed by Act 454 of 1972, by which was enacted the Louisiana Consumer Credit Law, La.R.S. 9:3509-68. Under this new statute lenders must secure licenses to lend "supervised loans", i. e., those exceeding the present eight per cent per annum, La.R.S. 9:3516(27). See La.R.S. 9:3557.
[2] Civil Code Article 2924. This will be discussed in text below. The normal maximum conventional rate provided is 8% per annum.
[3] The small loan law authorized between 30% and 42% per annum on loans not to exceed $300.
[4] The attorney was furnished by the finance company, and his firm represents it.
[5] This represents 32½% per annum interest on the descending balance of a loan of $700. Although the Small Loan Law only authorized maximum 42½% interest on the first $150 and only 30% per annum on the next $151-300, the "protection" of this act did not, however, apply to Jones, since he borrowed in excess of $300. See proviso to La.R.S. 6:585 (1952), prohibiting exaction of greater than 30-42% interest on loans: But "This prohibition shall not apply to any loan the consideration for which is in excess of three hundred dollars."
[6] "Default charge: 5% of the amount due and unpaid on any installment in default for each 5 days not to exceed 15."
[7] "Additional fees will be charged on an installment 5 days delinquent."
[8] 5% on installments overdue 5-10 days, 10% on installments due 10-25 days, 15% on installments longer overdue.
[9] Seventeen of the installments were made about the 25th of the month and subject to a $2.40 late charge, or (at 10% for 15 days) at the rate of 240% per annum on the overdue installment (which itself included prepaid interest). Six of the installments were paid on or about the 20th of the month, or (at 5% for 10 days) at the rate of 180% per annum on the overdue installment. The remaining $3.60 late charge was for an installment overdue 35 days, or (at 15% for 35 days) at the rate of about 150% per annum on the overdue installment. In addition to the $49.20, a $10.00 "extension charge" was exacted on September 19th, since Jones having missed the June payment was paying an additional $2.40 each on the July, August, and September installments, technically 25 days overdue instead of being timely (due to the missed installment).
[10] Civil Code Article 2924 prior to the 1970 and 1972 amendments provided:

"[1] Interest is either legal or conventional. Legal interest is fixed at the following rates, to wit:
"[2] At five per cent on all sums which are the object of a judicial demand. Whence this is called judicial interest;
"[3] And on sums discounted at banks at the rate established by their charters.
"[4] The amount of the conventional interest cannot exceed eight per cent. The same must be fixed in writing; testimonial proof of it is not admitted in any case.
"[5] Except in the cases herein provided, if any persons shall pay on any contract a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recoverd within two years from the time of such payment.
"[6] The owner or discounter of any note or bond or other written evidence of debt for the payment of money, payable to order or bearer or by assignment, shall have the right to claim and recover the full amount of such note, bond or other written evidence of debt and all interest not beyond eight per cent per annum interest that may accrue thereon, notwithstanding that the rate of interest or discount at which the same may be or may have been discounted has been beyond the rate of eight per cent per annum interest or discount; but this provision shall not apply to the banking institutions of this State in operation under existing laws.
"[7] The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferrable [transferable] by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note [,] bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight per cent per annum; provided such obligation shall not bear more than eight per cent per annum after maturity until paid.
"[8] Provided however, where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence."
[11] The amendment by Act 315 of 1970 increased "legal" or "judicial" interest (i. e., in absence of a conventional agreement for more or less) from five to seven per cent per annum. Act 454 of 1972 amendment amended paragraphs 6 (commercial discount loans) and 7 (capitalized interest loans) to make them inapplicable to consumer credit transactions which after January 1, 1973 are regulated by the Louisiana Consumer Credit Law, La.R.S. 9:3509-68 (1972). Note also La.R.S. 9:3503 (1969) had increased the maximum conventional rate to 10% on loans secured by a mortgage on immovable property; however, this increase from 8% was limited to "obligations bearing interest from date" as "fixed in writing", thus apparently being intended not to affect the ordinary consumer credit transactions, which for loans in excess of $300 normally capitalize the interest within the face amount of the note and bear interest from maturity.
[12] Osborne v. Mossier Acceptance Co., 214 La. 503, 38 So.2d 151 (1948) refused to apply the forfeiture provision of Act 291 of 1855, Section 2 (predecessor of La.R.S. 9:3501 (1950)) on the assumption that Act 68 of 1908 had repealed it, 38 So.2d 153; overlooking that this provision of the 1855 act had been continued in the Revised Statutes of 1870, Section 1884, at a time when other portions of the act had been incorporated in Civil Code Article 2924; in any event, the re-enactment by the 1950 Revised Statutes makes such decision uncontrolling. Berger v. DeSalvo, 156 So.2d 323 (La.App.4th Cir. 1963) limited the forfeiture of usurious interest to periods in which usurious interest was exacted, upon authority of Lalande v. Breaux, 5 La.Ann. 505 (1850) overlooking that this decision predated the 1855 enactment and concerned Act 25 of 1844 statute (under which the entire interest, even legal interest, was deemed forfeited because of usurious charges, see decisions cited by Lalande, Hynes v. Cobb, 2 La.Ann. 363 (1847) and Richards v. Presler, 2 La.Ann. 264 (1847)) and, moreover, concerned an involved situation possibly distinguishable on the facts. Williams v. Halsmith, 17 La.Ann. 200 (1865) disallowed as usurious ten per cent interest and, without explanation, reduced it to the conventional rate of eight per cent instead of disallowing it entirely, but citing only an 1856 act (and thus apparently not considering the effect of the 1855 act).
[13] I.e., the $522 balance of the 1967 note, plus $105 new cash advanced.
[14] The full holding was that, where a new loan additionally included usurious interest from an old loan, the full note could be collected. However, it disallowed recovery on another note, which included only usurious interest plus a non-related debt. This is in deference to the jurisprudence holding that a promise to pay usurious interest is not such a natural obligation as will constitute a valid consideration for a new promise to pay. See Rosenda v. Zabriskie, 4 Rob. 493 (1843) and succeeding jurisprudence, such as Chadwick v. Menard, 104 La. 38, 28 So. 933 (1900) and Commonwealth Finance Company v. Livingston, 12 So.2d 44 (La.App.Orl.1943).
[15] Jones argues that examination of the facts and the actual pleadings in the case indicates that the 18% "usurious" interest included within the new note was actually only capitalized interest included within the face amount of the previous one. It was therefore valid, not illegal, interest in excess of the conventional maximum of 8%, as authorized by Civil Code Article 2924. Thus, he argues the court did not hold that collection of illegal interest could be accomplished by adding a small cash consideration for a new note. In view of our disposition, we do not reach consideration of the merits of this argument.
[16] We assume, most favorably to the creditor, that only interest subsequent to the usury is forfeited. Under the literal terms of La.R.S. 9:3501, "the entire interest ... so contracted" is forfeited. That is, we assume, without deciding, that all interest (capitalized, stipulated, late charges, etc., as discussed supra) is forfeited only from the date of the usury, most favorably to the creditor herein.
[17] Actually, although obligations may be extinguished by either payment or novation, Civil Code Article 2130, there is a difference between payment, Civil Code Articles 2133 et seq., and novation, Civil Code Articles 2185 et seq.
[18] The present plaintiff apparently relies upon the court's holding in rejecting a reconventional demand by the debtor in that case to recover a monied judgment for amounts previously paid on principal. As to this, the court stated, 12 So.2d 47: "We feel that though because of the law there is no legal obligation to repay any part of such notes as are involved here, there is a natural obligation imposed by conscience and natural justice to repay so much of such loans as was actually received, and, if so, then whatever may have been paid up to the amount actually received may not be recovered back." See Civil Code Article 1757(2): "A natural obligation is one which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice." The quotation makes it self-evident why this holding is not apposite to the present issue, where the debtor pleads usury as a defense and is not affirmatively seeking a monied judgment to recover back previous payments of principal.
[19] Huntington v. Westerfield, 119 La. 615, 44 So. 317 (1907), indicated that usurious interests previously made in cash, pleaded in defense to a suit on the face amount of a renewed note, were subject to a plea of two-year prescription. If this decision were applicable here, no plea of prescription has been filed in the present suit, so such defense could not have been considered. See La.Code Civ.P. Art. 927; Consolidated Loans, Inc. v. Smith, 190 So.2d 523, 525-526 (La.App.1966). The 1907 Huntington opinion was apparently legislatively overruled by the 1908 Amendment adding Paragraph 8 to Civil Code Article 2924, which is quoted in the next paragraph of the text.