GAUDIN, Judge.
Plaintiff Star Amusement, Inc., filed suit against defendant Eleanor Strini on a promissory note secured by a chattel mortgage on barroom equipment. In response, Mrs. Strini alleged that the interest on the note was usurious and, further, that Star and a third party defendant, Harry Duvig-neaud, had perpetrated a conversion of her property.
The trial court found:.
(1) That interest on the note was usurious and that all interest had to be forfeited, and
(2) That a conversion had occurred, necessitating an award of $10,000.00 in damages to Mrs. Strini, payable by Star.
Star appealed, contending that the interest was not usurious, that there had been no conversion and, even if theré had been, Mrs. Strini did not prove damages. Mrs. Strini answered the appeal, arguing that Duvig-neaud, Star’s general manager and the owner of the premises where Mrs. Strini’s business was located on North Causeway Boulevard in Metairie, Louisiana, should have been individually cast in judgment along with Star.
We hold:
(1) That the interest was usurious, and
(2) That there was no evidence of a conversion by Star or Duvigneaud.
FACTUAL BACKGROUND
On March 15, 1978, Star sold to Mrs. Strini various pieces of barroom equipment, such as bar stools, tables, chairs, cash register, draft beer cooler, etc., for $25,000.00. In conjunction with the sale, Mrs. Strini executed a promissory note and chattel mortgage.
Mrs. Strini, or someone in her behalf, made payments on the note until the May 5,
*661 1980, payment became due. Just prior to this time, on April 17, 1980, Star’s attorney had sent a letter to Mrs. Strini saying:
“The Star Amusement Company has placed with us for attention and collection the balance of a chattel mortgage note executed by you on March 15, 1978 and payable to the order of bearer. Our client has directed our attention to the fact that you have continuously failed to make your installment payments of $625.00 on the 5th of each month as provided in the note.
“I direct your attention to the provision in the note that the failure to pay any installment as provided in the note and chattel mortgage ‘shall render, at the option of the holder hereof, all remaining installments at once due and exigible without any putting in default.’
“You are accordingly advised that our client will not accept any late payments of installments and should you fail to make prompt payment of the installment due on May 5,1980 and thereafter on the 5th of each month, we will proceed with execution on the note and chattel mortgage without further notice.”
Mrs. Strini admitted receiving this letter at her home address in Metairie.
In late April, Mrs. Strini’s lounge appeared abandoned, according to Duvig-neaud. Mrs. Strini testified that she was “very tired”, that she “... wanted to sell the place ...” and go on vacation.
“When were you going?” Mrs. Strini was asked. She replied:
“I wasn’t going any place. I was just going to stay home. That is when I closed the club.”
Sometime after May 5 and before May 21, Duvigneaud entered the lounge to inventory the equipment listed on the chattel mortgage. Duvigneaud said the front door was not secured with a padlock but that “.. . it was nailed shut. They had no locks on it. When I went there, it was nailed shut. I just put it right back the way it was.”
Some days later, Duvigneaud apparently entered the lounge a second time; and he notified the Jefferson Parish Sheriff’s Office that some equipment had been stolen by parties unknown or removed by Mrs. Strini. A police officer went to the lounge on May 21st and made an official report.
Regardless, Mrs. Strini never made the May 5, 1980, payment and at no time attempted to recover any of the equipment left in the lounge. Star filed suit on June 16, 1980, and Mrs. Strini subsequently filed her answer and reeonventional demand, and her third party demand on Duvigneaud.
USURY
The maximum legal rate of interest at the time Mrs. Strini signed the note was eight (8) per cent[1] unless a special condition permitted a higher rate of interest. Star made no attempt to show that any special condition was applicable.
The only witness who testified about Mrs. Strini’s interest rate was actuary Louis Vedros. He said that a $25,000.00 loan requiring 60 monthly payments of $625.00 would have an annual interest rate of 17.96 per cent, which is obviously usurious.
Star contended that only that part of the interest rate above eight (8) per cent should be forfeited, not the entire amount.
However, LSA-R.S. 9:3501 reads:
“Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.”
From Thrift Funds of Baton Rouge v. Jones, 274 So.2d 150 (La.1973):
“Statute providing for forfeiture of entire interest contracted for if in excess of that authorized by law causes forfeiture of all interest due on contract, not just usurious portion of it and not just portion due during period that usurious charges were exacted.”
Star also contends, citing People’s National Bank v. Smith, 360 So.2d 560 (La.App. 4th Cir.1978) and Wright Insurance *662 Company v. Scott, 371 So.2d 1207 (La.App. 1st Cir.1979), that because of Mrs. Strini’s default, attorney fees should be awarded. However, neither decision is applicable.
In People’s National Bank, the interest charged was not usurious; and in the Wright Insurance Agency case, attorney fees were not at issue.
We cannot say that the trial judge’s award of $8,125.00, representing the balance due on the obligation minus all interest, was manifestly erroneous and without a reasonable factual basis.
CONVERSION
The tort of conversion (or trover) includes any act or dominion wrongfully asserted over property of another inconsistent with the owner’s rights. While the trial judge found Star guilty of conversion because of Duvigneaud’s actions, we do not agree with this conclusion.
As Duvigneaud was both the lessor and Star’s representative, we cannot fault him for entering the lounge considering these realities: (1) the rent was not timely paid despite the April 17th warning letter, (2) the business was not operating and appeared to be shut down and (3) there had been no contact between- Mrs. Strini and Duvigneaud.
Also, there was no showing that Duvig-neaud actually took anything or that he intended to exercise any permanent control over any of Mrs. Strini’s equipment, even if he did install padlocks (which he denied). If a lessee has not timely paid the monthly rental and it appears that the business has been terminated or at lease suspended and no explanation has been forwarded by the lessee, it is our judgment that a lessor can take appropriate steps to preserve property in the leased premises, particularly if the equipment is mortgaged and the lessor is also the representative of the mortgage-holder.
The refusal to allow an owner access to his property can be a wrongful conversion, as in Elmer v. M. Levy Co. of Shreveport, 377 So.2d 453 (La.App. 2nd Cir.1979), but the record does not substantiate a tor-tious refusal by Duvigneaud, acting either as lessor or as Star’s agent.
CONCLUSION
For the foregoing reasons, we affirm the award of $8,125.00 in favor of plaintiff Star Amusement, Inc., and against defendant Eleanor Strini, and we annul and set aside the award of $10,000.00 in favor of Mrs. Strini as a plaintiff in reconvention and against Star.
Further, we affirm the trial court’s dismissal of the third party demand by Mrs. Strini on third party defendant Harry Du-vigneaud.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. According to LSA-C.C. art. 2924.