LOBRANO, Judge.
This appeal arises out of a suit for usury brought by plaintiff-appellants, Albert J. Huddleston, and his wife, Aurelia S. Hud-dleston, Robert D. Martinez and his wife, Mardel W. Martinez and Jacques E. Lauer, and his wife, Alva N. Lauer (hereinafter Huddleston) against defendant-appellee, Bossier Bank and Trust Company (hereinafter Bossier) for the return of certain payments, (interest and non-interest) made in connection with a loan for $825,000.00. The lower court rejected Huddleston’s claim but did award them $9,250.00 in attorney fees. Both parties have appealed.
STATEMENT OF THE CASE:
Albert J. Huddleston, as the owner of an undivided one-third interest in the apartment complex known as the “Malibu Apartments” filed suit in November of 1977 seeking a partition by licitation. The lawsuit proceeded to a June 21, 1978 judicial auction. No sale occurred on this date. *1338 Another judicial auction was advertised and set for August 2,1978. At this auction one of the appellants herein, Jacques Lauer bid the property in for the price of $1,250,-000.00. A deposit of $125,000.00 was put up with the Sheriff as a down payment. This deposit was jointly made by Huddle-ston, Lauer and Martinez. Each put up one-third. Each intended to own an undivided one-third interest in the complex after the sale. However, that sale was not completed as the lender who had committed to lend appellants the balance of the purchase price refused to make the loan. Another judicial auction was advertised for October 25, 1978. At this time, after receiving the necessary loan application and financial statements, Bossier agreed to make the loan in the amount of $825,-000.00. It was agreed by all parties that this loan would be a discounted loan. In connection therewith, on October 3, 1978 Huddleston executed a collateral mortgage which was pledged to secure a hand note in the amount of $894,083.03 payable to Bossier with interest at 10% from maturity, and due in 90 days. The breakdown on said note is as follows:
Cash proceeds $825,000.00
Life Insurance Premium 19,014.00
Precomputed interest 21,748.61
Loan Fee (points) 28,320.42
$894,083.03
When the note matured January 1, 1979 Huddleston was unable to pay it in its entirety. Negotiations took place to renew the note for an additional ninety days, and Bossier agreed to this provided Huddleston pay the sum of $39,195.30. This amount was paid, and a new note was executed on January 2, 1979.[1] This note was in the amount of $905,501.05 payable to Bossier, with interest at 8% from maturity and due in ninety days. Bossier asserts, and offers proof that the breakdown on this note is as follows:
Balance due on October 3, 1978 note $894,083.03
Less Payment 39,195.40
Balance to Renew $854,887.73
Fees to renew $ 17,446.69
Precomputed interest 33,166.63
Amount of new note $905,501.05
Bossier asserts that of the $39,195.30 paid by Huddleston, $21,748.61 was interest on the October note, and $17,446.69 were fees or points charged to renew the note. As seen later in this opinion Huddleston presents a contrary argument.
This renewal note matured April 3, 1979. On April 2, 1979, Huddleston again executed a renewal note extending the due date for an additional 91 days. This third note matured on July 2, 1979. This note remained unpaid until November 12, 1979.
On November 2, 1979, Huddleston tendered payment of $877,173.39 on the April 2, 1979 note. Of this amount $23,573.37 represented interest thru November 9, 1979. Bossier rejected this payment asserting the correct payout amount to be $911,417.03.
After considerable discourse between their attorneys, Bossier accepted Huddle-ston’s payout figure as full payment. As a result of this controversy, Huddleston incurred attorneys’ fees of $9,250.00.
On December 19, 1979 Huddleston filed the instant suit against Bossier. In Count I of his petition, Huddleston alleged that the promissory note of October 3, 1978 for $894,083.03 was usurious and therefore, all charges in connection with the use of the money loaned must be returned. These charges are alleged as follows:
(a) Life Insurance Premium $19,014.00
(b) Capitalized Interest 21,748.61
(c) Capitalized Fees (points) 28,320.42
$69,083.03
Thereafter, Huddleston amended Count I to request in addition to the above, the loan renewal fee of $17,446.69 bringing the total in Count I to $86,529.72.
Count II of Huddleston’s original petition concerned Bossier’s alleged tortious conduct in refusing to accept the $877,173.39 tendered to pay the April 2, 1979 note. Huddleston prayed that all charges in- *1339 eurred for the use of the money loaned by Bossier to Huddleston pursuant to that note be returned. He also alleged that legal fees of $9,250.00 were incurred in order to prevent payment of the incorrect usurious amount demanded by Bossier.
Subsequent to the filing of the original petition, Huddleston withdrew his demand for all items of damages prayed for in Count II with the exception of the $9,250.00 attorney’s fees incurred.
From the judgment rejecting his demands Huddleston appeals alleging four specifications of error:
1) The Court erred in that, while it found as a matter of fact that the promissory note of October 3, 1978 provided for interest of ten (10%) percent post maturity interest, which exceeded the maximum conventional interest allowed by Article 2924 of the Louisiana Civil Code as it read at the time, the Court nonetheless found that usurious payments were required to make the October 3, 1978 note a usurious contract, and to create a cause of action based upon usury.
2) The Court erred in that it did not even address the issue of whether the interest paid on the October 3, 1978 note, as discount, was usurious interest under Article 2924 of the Louisiana Civil Code, because the said note was usurious on its face.
3) The Court erred in finding that the $17,466.69 “renewal fee” charged by Bossier did not constitute a usurious interest charge, forfeited under the usurious contract.
4) The Court erred in finding that the life insurance premium of $19,014.00 paid by Huddleston was not forfeited by Bossier, because of the usurious contracts.
Bossier appeals the judgment alleging two specifications of error:
1) The court erred in awarding attorney’s fees to Huddleston;
2) The court erred in failing to find that Huddleston’s claim for the forfeiture of the $17,446.69 renewal fee had per-empted.
HUDDLESTON’S SPECIFICATIONS OF ERROR 1 and 2.
Huddleston asserts that the first note dated October 3, 1978 is usurious on its face in that it provides for 10% interest after maturity and therefore all interest paid on the note should be forfeited. Hud-dleston relies on La. Civil Code Article 2924 and this Court’s decision in Grünewald v. Bartkolemew, 269 So.2d 274 (La.App. 4th Cir.1972).
At the time the first note was executed Article 2924 provided in pertinent part:
“The amount of the conventional interest cannot exceed 8% ...
Except in the cases herein provided, if any person shall pay on any contract a higher rate of interest than the above, as discount of or otherwise, the same may be sued for and recovered within two years from the time of such payment ... The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferrable (transferable) by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note (,) bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight percent per annum; provided such obligation shall not bear more than eight per cent per annum after maturity until paid.”
In addition La.R.S. 9:3501 provides:
“Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.”
In Paulat v. Pirello, 353 So.2d 1307 (La.1977) our Supreme Court in dealing with a situation wherein interest was collected every six months on the maturity date of a discounted note without renewal of the note stated:
“Louisiana Revised Statute 9:3501 provides for the forfeiture of interest in excess of that authorized by law collect *1340 ed by virtue of a contract so providing.” Id. at 1308.
There is no question that the October 3rd note, as written violated the above quoted provisions of Article 2924. However the trial court found that the 10% figure was placed in the note due to a clerical error, and that that note was renewed without the payment of any interest other than the discounted interest contained therein. We agree with this conclusion, and reject Huddleston’s argument that simply because the note was usurious on its face all interest collected must be forfeited. The lower court’s conclusion is well substantiated by the evidence.
Bossier’s president, Mr. McKigney, testified he never loaned money on a note he knew to be usurious. He stated he did not realize the note called for 10% after maturity and would have changed the rate to 8% had he noticed the error.
Bossier’s notary, Mr. Herzog, who prepared the note, testified he understood the law to be 8% at that time and did not intend to place the 10% figure in the note. He surmises that his secretary inadvertently placed 10% because she also prepared a collateral mortgage at the same time, and the law allowed a real estate mortgage to bear 10% interest.
Huddleston’s reliance on Grünewald, supra, is not substantiated by the facts of that case. True our Supreme Court in Paulat, supra, agreed with the legal principle enunciated in Grünewald that “usury is determined from the face of the instrument”, the facts of that case are clearly distinguishable from this case. In Grüne-wald the plaintiff was attempting to collect the full amount of a discounted note which had no maturity date, but was payable on demand. The court stated:
“As maturity in a demand note is the date of the instrument, there is no interval of time between date and maturity; they occur at the same time.” Grüne-wald, supra at 227.
Thus the court held that since the discounted interest exceeded 8% per annum, the note violated the provisions of Article 2924.
The situation in the instant case is clearly different. There is no attempt by Bossier to collect usurious interest, nor has Huddleston paid any usurious interest. A plain reading of Article 2924 makes it clear to this Court that only persons who “shall pay” on any contract a higher rate of interest have a cause of action. This also would include a situation where the holder attempted to collect at a higher rate than allowed by law. See, Holmes v. Eisler, 289 So.2d 820 (La.App. 4th Cir.1974) where the holder filed suit to collect usurious interest. We are not unmindful of the holding in Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150 (La.1973) cert, denied 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53, wherein our Supreme Court ordered the forfeiture of all interest collected by plaintiff on a note which provided for usurious interest in the nature of late charges. The language of that case would seem to indicate that La.R.S. 9:3501 provides for the forfeiture of all interest. However we believe that language is tempered and further explained by the above cited quote from the later Paulat case, supra.[2] We believe the Supreme Court intended that statute to apply to a situation where usurious interest was actually collected. This would be consistent with Thrift Funds where usurious interest was in fact collected, and additional usurious interest was being sought.
Therefore we hold that where the note became usurious on its face by virtue of a clerical error, and where the holder neither collected nor intended to collect usurious interest, nor attempted to collect usurious interest, there is no forfeiture of the legal interest collected.
This brings us to Huddleston’s third argument that the $17,446.69 fee was in fact interest paid after the maturity of the October 3rd note and is therefore usurious.

*1341
Error No. 3

The trial court properly found that the $17,446.69 payment made at the time the October 3, 1978 note was renewed did not constitute a usurious interest payment but was, in fact, a fee charged to renew that loan, and was charged in connection with the renewal note of January 2, 1979. Mr. McKigney testified that had Huddle-ston opted to pay the first note in full rather than renew the loan, the fee would not have been charged. The agreement to renew was a separate contract which arose when Huddleston decided to renew the loan for another 90 days. There is no language in the first note concerning late or renewal fees which could be camouflaged interest. See, Thrift Funds of Baton Rouge, Inc. supra. In discussing the legal relationship between successive notes, the Supreme Court in Karmgard v. Southland Mortgage Company, 341 So.2d 1109 (La.1977), stated:
“However, the interst as to note number two does not in our view arise from the same contract. While the second note immediately succeeded the first, and while the consideration for execution of the second note was a novation of the principal outstanding at conclusion of the first note, we believe that there were here separate and distinct contracts, certainly at least with respect to the capitalized interest charges on the second being untainted by the usurious interest charges collected on the first.” at p. 1115. (emphasis added)
Thus we hold that the $17,446.69 fee paid by Huddleston was not interest on the first note but was the consideration for renewing that note.
HUDDLESTON’S SPECIFICATION OF ERROR NO. 4:
In this specification of error, Huddleston discusses the types of damages available when usurious interest has been charged and paid. As we have already determined that Bossier was not liable for any usurious loan transactions to Huddleston, the measure of damages is moot. However, the trial judge in his reasons for judgment discusses the $19,014.00 life insurance premium charged by Bossier:
“The Court is of the opinion that the life insurance premium ... was in no sense a fee or interest ... paid by plaintiffs to the defendant for the loan ... but was a security requirement of the lender.”
The law is clear. The judgment of the trial court is correct. Even assuming Huddleston had prevailed in his usury claim, he would not be entitled to the return of the premiums. Gordon Finance Company v. Chambliss, 236 So.2d 533 (La. App. 4th Cir.1970); Evangeline Bank and Trust Company v. Guillory, 364 So.2d 220 (La.App. 3rd Cir.1978).
BOSSIER’S SPECIFICATION OF ERROR NO. 1:
Bossier contends the trial court erred in awarding Huddleston attorney’s fees of $9,250.00. We agree with Bossier. In his reasons for judgment, the trial judge stated:
“... the defendant’s failure to accept the principal and interest due on the April 3, 1979 promissory note was an illegal act which caused the plaintiffs to incur attorney fees in the amount of Nine Thousand Two Hundred and Fifty Dollars ($9,250.00). Absent defendant’s improper refusal to accept the amounts due on that promissory note, that is, the sum of Eight Hundred Fifty-three Thousand Six Hundred Dollars and 02/100 ($853,-600.02) plus eight per cent (8%) post-maturity interest, the plaintiffs would not have incurred the expense claimed for attorney fees in the amount of Nine Thousand Two Hundred Fifty Dollars ($9,250.00).”
The general rule is that attorney’s fees are not allowed a successful litigant in Louisiana except where authorized by statute or contract. General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La.1980); Nassau Realty Company Inc. v. Brown, 332 So.2d 206 (La.1976).
Besides the fact that Huddleston was unsuccessful in his demands and with *1342 drew the demand in Count II for which the attorney’s fees were incurred, there is absolutely no statutory or contractual authority upon which the trial judge could lawfully have awarded attorney’s fees.
BOSSIER’S SPECIFICATION OF ERROR NO. 2:
Since we have determined the $17,446.69 renewal fee was not usurious interest, we need not discuss whether Huddleston’s claim for forfeiture of that amount had prescribed or perempted.
For the reasons assigned above, the judgment of the trial court awarding attorney’s fees of $9,250.00 is reversed. In all other respects the judgment is affirmed.
REVERSED IN PART, AFFIRMED IN PART.

. Although the $39,195.30 was paid around January 12, 1979, all parties agreed that the note be back dated to coincide with the maturity date of the first note.

. We note that both opinions were authored by Justice Tate.