TUCKER, Judge.
This is a proceeding by executory process on two notes executed by Mr. and Mrs. W. F. Steedley and their son Jimmie C. Steedley, and secured by a mortgage on defendants’ home and a chattel mortgage on their Dodge automobile and household furnishings. Only Mr. and Mrs. W. F. Steed-ley were named in the executory process; however their son Jimmie joined them in the petition for an injunction to halt the sale of the security, on the basis of payment of the notes, and for damages and attorney fees. They alleged, also, that usurious interest had been charged and asked for return of the overpayment on the two notes. Later they amended their petition to plead violation of the Direct Vehicle Loan Act and to ask for penalties under that act. Plaintiff Miley, defendant in Rule, denied payment and usurious interest and plead two-year prescription under Civil Code Article 2924.
An interlocutory judgment was granted issuing a preliminary injunction against the sale of the mortgaged property. Plaintiff Miley has appealed alleging that the trial court erred (1) in allowing inadmissible testimony and evidence over timely objections; (2) in adhering to its own rulings and failing to consider the plea of two-year prescription under C.C. Art. 2924; and (3) in failing to follow the holding in Thrift Funds of Baton Rouge, Inc. v. Jones, 259 So.2d 587 (La.App. 1st Cir. 1972).

Admissibility of Evidence:

We find the trial judge correct in his admissibility of evidence both at the time of the trial and later under offer of proof, which relates to financial transactions between the parties herein involved from 1963 to date. Although the notes sued upon are dated 1968, which leads appellant to argue that notes dated prior to two years before that date prescribed under the provisions of C.C. Art. 2924, and cannot be offered in evidence, a careful reading of all provisions of Article 2924 reveals the following: “. Provided however where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence.” Wherein the Steedleys offered notes and other evidence dated more than two years prior to the 1968 dates of the notes to show usury as a defense to appellants’ suit, it was properly admissible as “competent evidence,” despite the trial judge’s citation in his reasons for judgment of Lawrence v. Durr, 195 So.2d 337 (La.App. 4th Cir. 1967), which does not apply.
Appellant has complained about the trial judge’s admission of unauthenticated bank statements to prove payments. We find that counsel for appellee carefully laid the groundwork for the admission of these xeroxed copies of bank statements and check stubs by proving that the original checks and statements were unavailable. Furthermore, the Steedleys and Mileys have testified to the validity of the respective copies which they had reason to recognize.
The trial judge erred in permitting parole evidence to vary the face of the note dated June 14, 1968, which Jimmie Steedley testified was actually made in 1965, but the information for which this note was submitted in evidence is contained in Exhibit O.P. No. 4.

Applicability of Direct Vehicle Loan Act:

The trial judge was correct in holding the Direct Vehicle Loan Act inapplicable to the facts of this case as urged by appellees both in their alternative petition and on appeal. There is no direct evidence to support appellee’s claim that appellant Miley had ever made any loans for the purchase of automobiles except in one other instance besides the one involved in this case. We agree with the trial judge that Mr. Miley can hardly be considered a *524 “person engaged in whole or in part, in the business of lending money on promissory notes.secured by liens on motor vehicles,” within the meaning of R. S. 6:970, and therefore subject to its penalties.
Facts and Law: ($10,526.82 Note)
The two notes executed by the Steedleys which are the basis of the present suit were both dated April 8, 1968, in the face values of $10,526.82 and $7,925.00, with claimed balances due, respectively, of $5,328.08 and $1,942.81. Each note was secured by a chattel mortgage on defendants’ 1968 Dodge automobile and defendants’ household furniture. Each note was secured, also, by a separate mortgage on defendants’ home. Each note was payable in monthly installments and each note bore interest at the rate of 8% per annum from maturity. Both notes were signed by Jimmie Steedley, defendants’ son, as well as by his mother and father, all of whom joined in the present action for an injunction. Monthly installments of $200.00 were fixed and set on this $10,526.82 note. It was the last of a series of notes, but actually represented only two loans. Defendants have alleged payment of the principal of the note and also have urged the defense of usurious interest charged by the plaintiff-appellants.
The balances from three other notes were incorporated into the $10,526.82 note, as set forth below:
I. $3,844.80 Loan from Mr. Miley to Mr. and Mrs. W. F. Steedley, dated June 12, 1963 (Exhibit Miley No. 28, O.P. No. 5):
The evidence of this loan consists of itemizations in the handwriting of Mr. Miley, bearing a notation at the top of the page, “Actual Loan $3801.80.” Simple arithmetic, however, shows that this loan was actually for $3,844.-80.
The amount of the note is set forth below:
(1)W. F. Steedley & American Bank $1,670.99
(2) W. F. Steedley & Dial Finance 1,268.07
(3) W. F. Steedley & Term Plan Finance . 610.00
(4) W. F. Steedley & Walter Krousel, Jr., Atty. 25.00
(5) Insurance on W. F. Steedley's life . 183.00
(6) Check to W. F. Steedley. 87.74
(7) Interest & Mise. Charges to August 15, 1963 . 3,231.72
$7,076.52
This loan was secured by a $9,000.00 collateral mortgage note, dated June 8, 1963, on W. F. Steedley’s home (Exhibits O.P. 9 & 10), and also by a chattel mortgage on W. F. Steedley’s 1960 Buick Electra automobile and his household furniture (Exhibits X-Miley No. 1, O.P.W. No. 13; and X-Miley No. 2, O.P.W. No. 14). Both of these notes also were signed by the Steed-leys’ son Jimmie.
Additional handwritten Miley sheets (O.P. No. 2 & O.P. No. 3) show the monthly payments to be paid on this loan and those actually paid. Other handwritten Miley records show the actual cost of the account (Miley No. 29, D. No. 6), plus a miscellaneous charge of $50.00 to Tommy Bissel for bringing Steedley to Miley as a customer, and the amount of cash to be loaned (D No. 7). The stubbs from Miley’s checkbook (O.P. No. 6, 7 & 8) show the sum received by W. F. Steedley as set forth in Exhibit Miley No. 29, D No. 6, while Exhibit O.P. No. 11 provides a tabulation of same.
The very important conclusion to be drawn from the foregoing is that the 1963 loan was for $3,844.80 as principal, and $3,231.72 as discounted interest.
W. F. Steedley actually paid 29 monthly installments totaling $4,219.21 (Exhibits O.P. Nos. 2 & 3). The record of pay *525 ments had a notation of “New note in addition $309.17,” with a claimed balance of $3,166.48 on this loan. Thereafter Mr. Steedley requested Mr. Miley to reduce his payments and a new note was executed, as set forth hereafter.
II. $5,988.96 demand note, signed by Mr. and Mrs. Steedley, dated February 7, 1966, bearing interest of 8% from its date. (See Exhibits S No. 1, D No. 11):
Notations on Miley’s records (Exhibits O.P. No. 3 and No. 7) show that the balance from the June 12, 1963, loan of $3,166.48 was included in this new note, plus $2,822.48 capitalized interest. This was also confirmed by the testimony of witnesses. The same two $9,000.00 notes mentioned above were given in pledge for the new note.
W. F. Steedley paid 24 monthly payments of $83.18 on this note through January 13, 1968, making a total of $1,996.32, and leaving a claimed balance of $3,986.64 (Exhibit Miley No. 7).
Meanwhile Steedley purchased a new Dodge automobile from Standard Motor Car Company on January 17, 1968 (D. No. 21), in a transaction which had no connection with the February 7, 1966, note. Steedley financed this automobile through a note and chattel mortgage for $3,444.00 with three monthly payments of $1,148.00 each (Exhibits S Nos. 1 & 2). Later Miley paid the automobile indebtedness of Steedley by three checks of $1,148.00 each (Exhibits D Nos. 17, 18, & 19), dated February 17, 1968, March, 1968, and April 16, 1968.
III. $6,706.54 demand note signed by Mr. and Mrs. Steedley, dated Feb. 9, 1968, bearing 8% interest from date (See Exhibit D-12):
Prior to making the payments for Steedley on his Dodge Miley obtained a demand note from the Steedleys, endorsed by their son Jimmie, bearing interest of 8% from its date. On the reverse side of the note there was handwriting indicating that the note was to be paid at the rate of $83.18 per month, “being 15 March 1968 w/int. at 8% on unpaid bal. each month from date.” This note contained $3,262.54 discounted interest.
Exhibit Miley No. 7 shows this note as follows: “2-14-68 New Loan $6,706.54 Int. (a> 8% on unpaid bal.” Then a total of this note for $6,706.54 and the balance of $3,986.64 on the February 7, 1966, note are shown combined on this record of payment for a total of $10,693.18, and noted to be a new loan “to be paid @ $166.36 per month.” A payment of $166.36 on March 15, 1968, was noted leaving a claimed balance of $10,526.82.
Finally on April 8, 1968, the note for $10,526.82, herein under consideration was drawn by the Steedleys, to consolidate the balance due from the February 7, 1966, note and the February 9, 1968 note, and stipulating to bear interest at 8% interest from maturity. Exhibits Miley No. 7 and D No. 2 show 35 monthly payments of $166.36 each, amounting to $5,822.60, which would leave a balance of $4,704.22. The claimed balance, however, is $5,328.08. Furthermore Exhibits Miley No. 7, D No. 2 show that Mr. Miley charged 8% interest from the date on 20 of the monthly payments.
$10,526.82 Note — applicable law:
The law applicable to this note is contained in Article 2924 of the Civil Code and in Revised Statutes 9:3501 which are quoted below in part:
Article 2924

The amount of the conventional interest cannot exceed eight per cent. The same must be fixed in writing; testimonial proof of it is not admitted in any case.
Except in the cases herein provided, if any persons shall pay on any contract a *526 higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered within two years from the time of such payment.
The owner or discounter of any note or bond or other written evidence of debt for the payment of money, payable to order or bearer or by assignment, shall have the right to claim and recover the full amount of such note, bond or other written evidence of debt and all interest not beyond eight per cent per annum interest that may accrue thereon, notwithstanding that the rate of interest or discount at which the same may be or may have been discounted has been beyond the rate of eight per cent per an-num interest or discount; but this provision shall not apply to the banking institutions of this State in operation under existing laws.
The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferable by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note, bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount then eight per cent per annum; provided such obligation shall not bear more than eight per cent per annum after maturity until paid. (Emphasis added)
Provided however where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence. (As amended by Acts 1970, No. 315 1.)”
3501 Forfeiture of interest — “Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.”
The portions of the above-quoted statutes which have special significance for this case are those which state that capitalized interest is an exception to the 8% per annum limitation, “provided such obligation shall not bear more than eight per cent per annum after maturity;” and the provision for forfeiture of usurious interest. In reviewing the notes and other evidence which were the consideration for the $10,526.82 note, with particular reference to the above cited portion of C.C. Art. 2924, one sees that the 1963 note (Miley No. 28, O.P. No. 5) which included $3,231.-72 discounted interest, was stipulated to bear interest from maturity. Even though this interest exceeded the 8% per annum limitation of the statute, it could not be considered usurious because it fell within the exception of the Code Article.
In the February 7, 1966, note (Mrs. S No. 1, D No. 11), however, which contained the balance due from the preceding note of $3,166.48, plus $2,822.48 capitalized interest, the 8% per annum interest was stipulated from the date of the note. The sole consideration for this note was refinancing to reduce the monthly payment, which is not an exception provided in C.C. Art. 2924. Clearly the $2,822.48 capitalized interest contained in the February 7, 1966, note was usurious under the terms of C.C. Art. 2924. By the terms of R.S. 9:3501 it was forfeited. The February 7, 1966, note, therefore, was collectible only to the extent of its principal of $3,166.48, which represented the balance due on the June, 1963, note. Payments on the second note consisted of 25 payments of $83.18 each, from February 15, 1966, through March 15, 1968, or a total of $2,079.50, which was paid prior to the time of the drawing of the April 8, 1968, note. The $3,166.48 balance from the first note was reduced by payments to $1,086.98.
The third note dated February 9, 1968 (D No. 12, see also Miley No. 7), also stip *527 ulated interest of 8% per annum from its date. The $3,262.54 capitalized interest contained in this note was forfeited also, under the terms of C.C. Art. 2924 and R. S. 9:3501. One payment of $83.18 was made on this note, which reduced the principal from $3,444.00 to $3,360.82. In recapitulation the $10,526.82 note sued upon was composed of the following items :
Balance
Forfeited due on
Interest Notes
(a) Bal. of $1,086,98 due on Feb, 7, 1966, note .$1,086.98
(b) Forfeited usurious Interest of $2,822.48 In Feb. 7, 1966, note .. $2,822.48
(c) Bal. of $3,360.82 due on Feb. 9, 1968 note . 3,360.82
(d) Forfeited usurious Interest of $3,262.54 In Feb. 9, 1968, note . .. 3,262,54 __
6,085.02 4,447.80
Total 10,532.82 *
The jurisprudence of this state since Rosenda v. Zabriskie, 4 Rob. 493 (1843) has held that a promise to pay usurious interest is not a natural obligation and cannot form a valid consideration for a new promise to pay. See also Chadwick v. Menard, 104 La. 38, 28 So. 933 (1900) and Commonwealth Finance Co. v. Livingston, 12 So.2d 44 (La.App.Orl.1943). Counsel for appellant has argued the authority of Thrift Funds of Baton Rouge, Inc. v. Jones, 259 So.2d 587 (La.App. 1st Cir.1972), writs granted 259 So.2d 910 (1972) and Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (1956) to the contrary. Examination of the Thrift Funds case reveals that it is inapposite to the case at hand inasmuch as the two notes involved in that case contained discounted interest and were stipulated to bear interest “after maturity,” which means that they would appear to come within the exceptions provided by C.C. Art. 2924. Likewise the Vosbein case is inapposite and does not authorize the voluntary capitalization of forfeited usurious interest in a new note as valid consideration for it. Despite some equivocal language used in the Vosbein case a careful reading of the facts of this case discloses that it was not interest forfeited due to its exceeding the limitation of 8% per annum “after date,” which was capitalized into a new note, but conventional interest of 18% per annum “after maturity.” This was the interest which the court in the Vosbein case termed “usurious,” because it exceeded the legal rate, but permitted it to be capitalized voluntarily into a new note, provided that the interest was capitalized with a portion of the principal obligation. Under the provisions of C.C. Art. 2924, where interest in excess of the lawful maximum rate is capitalized into the note, such act presents an exception to the general rules against usury.
Written evidence shows that the Steedleys paid $5,988.96 (Exhibits O.P. Nos. 2, 3, 12-64, Miley Nos. 7-25, and S Nos. 12-14 and D No. 2) on the $10,526.82 note sued on herein, which means an overpayment of the balance due, with the forfeited interest excluded, of $1,547.16. We find that the trial court is correct in its finding that the $10,526.82 note was fully paid under the provisions of C.C. Art. 2924 and R.S. 9:3501.
$7p25.00 Note — Facts and Law:
The note for $7,925.00, dated April 8, 1968, signed by the Steedleys and their son Jimmie, and secured by a chattel mortgage on their Dodge automobile and on their furniture, and by a mortgage on their home, actually represented a loan to their son Jimmie Steedley. Like the $10,526.82 note discussed above the son’s note was the last of several loans and notes, the balances of which had been incorporated into it as set forth below:
I. $6,966.24 Note, dated September 7, 1963, stipulating to bear 8% interest per annum "from date” (Exhibit O.P. J. No. 28, D No. 3).
This note was signed by Jimmie Steedley and his wife, payable in monthly install *528 ments of $145.13 (Exhibit O.P. No. 4, O.P. J. No. 29, D No. 4), and secured by a chattel mortgage on their furniture and a collateral mortgage on their home (Exhibits O.P. J. No. 30, D No. 5). This note actually represented a loan of $3,500.00, which Jimmie Steedley deposited in his bank account in Hammond. It contained $3,466.24 discounted interest of 8%, per an-num from date, which was usurious and became forfeited under the provisions of C.C. Art. 2924 and R.S. 9:3501, as set forth above.
Jimmie Steedley made 22 monthly payments on this note, however, from October I, 1963, through July 1. 1965, for a total payment of $3,192.86. Since the interest was forfeited, the balance of $3,500.00 loan was actually $307.14 at that date.
II. $2,483.33 note, improperly dated June 14, 1968, stipulating to bear interest at the rate of 8% per annum from date (Exhibit D No. 13).
This note represented a loan to Jimmie Steedley of $1,600.00 and contained capitalized interest of $883.33, at 8% per annum from date, as noted above. Although the trial judge improperly admitted parole evidence to vary the terms of the note, it is evident from Exhibit O.P. No. 4 that the amount of the face value of this note was added to Jimmie Steedley’s previous indebtedness to Mr. Miley, as a separate loan. Mr. Miley further corroborated this indebtedness by his testimony at pp. 241 and 244 of the record.
Twenty payments of $145.13 each were made by Jimmie Steedley to Mr. Miley after July 1, 1965, and through April 1, 1967, which totaled $2,902.60 (Exhibits O.P. J. Nos. 8-27). Since the interest was forfeited on this indebtedness, as well as on the 1963 note, as a violation of the provisions of C.C. Art. 2924 and R.S. 9:3501, as set forth previously the $2,902.60 payment overpaid the remaining balance of $307.14 plus the additional loan of $1,600.00 by $995.46.
III. $5,009.11 Note, dated April 25, 1967, and stipulating 8% per annum from date (Exhibit D No. 10):
This note was given for a loan of $1,000.00 which was deposited to Jimmie Steedley’s bank account on April 17, 1967 (Exhibit O.P. J. No. 2). Apparently the note was intended to include the claimed balance due on the September 7, 1963, note and on the June 14, 1965, indebtedness. Ten payments of $200.00 each were made on this note from June 1, 1967 through April 2, 1968 (Exhibits J. Nos. 35-44), for a total payment of $2,000.00.
This note, like the others given by Jimmie Steedley bore usurious interest within the provisions of C.C. Art. 2924, as set forth above and were forfeited under R.S. 9:3501. The $2,000.00 payments, therefore, overpaid the principal of $1,000.00. If the difference between the principal and the face amount of the note be considered as a promise to pay the amount of the forfeited usurious interest from the previous two notes and/or indebtednesses, it cannot be upheld, because a promise to pay usurious interest cannot be held as valid consideration for a new promise to pay, as set forth above.
IV. $7,925.00 note dated April 8, 1968, bearing 8% per annum interest from maturity (Exhibit Miley No. 4):
This note, which was one of the two sued upon, was executed by Jimmie Steed-ley and his parents for a principal of $2,009.11 (Exhibit D No. 20), delivered to Jimmie Steedley by Mr. Miley in the form of a check. It was the only consideration which he received for the note. This note was secured by mortgages as discussed and cited previously. Jimmie Steedley made 36 monthly payments of $200.00 each on this note, from May 1, 1968 through July 1, 1971 (Exhibits D No. 1 and D No. la), totaling $7,200.00. Jimmie Steedley’s checks, however, show payments totaling $7,600.00 for this period. (Exhibits J. Nos. 2-40).
*529 Mr. Miley testified that the difference between the face value of this note and the loan of $2,009.11 represented a promise to pay the usurious interest from the previous notes, but, as it was pointed out in the discussion of the $10,526.82 note, supra, that usurious interest was forfeited and cannot become the consideration for a new promise to pay it. It is not collectible.
This court upholds the findings of the trial court that the payments of $7,600.00 made by Jimmie Steedley on this note, overpaid the $2,009.11 principal by $5,590.-89. This note was paid in full.
The judgment of the trial court finding that both notes sued upon herein were paid in full is correct, and the order making the rule for the preliminary injunction absolute is affirmed at appellant’s costs.
Judgment affirmed.

 Note should have been for $10,532.82 instead of for $10,526.82.