333 So.2d 709 (1976)
Billy J. WOODWARD, Individually and as Administrator of the Estate of his minor son, Joseph E. Woodward, Plaintiff-Appellant,
v.
FIRST OF GEORGIA INSURANCE CO. et al., Defendants-Appellees.
No. 12919.
Court of Appeal of Louisiana, Second Circuit.
May 24, 1976.
Rehearing Denied July 7, 1976.
*710 Donald G. Kelly, Natchitoches, for plaintiff-appellant.
John S. Stephens, Coushatta, and Gold, Hall, Hammill & Little by Henry Bruser, III, Alexandria, for defendants-appellees.
Before PRICE, MARVIN and JONES, JJ.
En Banc. Rehearing Denied July 7, 1976.
MARVIN, Judge.
Early one morning Joe Ed Woodward drove to the home of his classmate and friend, Ken Weems, to give him a ride to Hall Summit High School. Joe Ed, age 17, wore two pistols into Ken's bedroom, a.38 caliber and a loaded .22 caliber single action revolver. Joe Ed either unloaded or attempted to unload the .22 pistol and placed both pistols on the bed. Ken, age 17, picked up the .22, spun the cylinder, half cocked the hammer and pulled, touched or hit the trigger. The pistol was loaded and it fired, injuring Joe Ed.
Suit was eventually brought for Joe Ed's injuries and related expenses against Ken and his father and Mr. Weems' insurer. A jury verdict under specific interrogatories found Ken Weems negligent and Joe Ed Woodward contributorily negligent so as to bar recovery. Plaintiff appeals. We affirm as to Ken's negligence but reverse as to Joe Ed's contributory negligence and award damages against all defendants.
A person using or examining a firearm must use extraordinary care in handling the weapon. See Normand v. Normand, 65 So.2d 914 (La.App.2d Cir. 1953). Ken breached his duty of care by handling the weapon without determining it was loaded or unloaded and by carelessly pointing it at Joe Ed and causing it to fire. The jury correctly found Ken Weems negligent.
Joe Ed's contributory negligence vel non, is not as easily resolved. Both boys were hunters in the rural area in which they lived. They sometimes discussed and were somewhat experienced with firearms. Ken thought that the half-cocked hammer position was the safety position on this pistol as it is on some other pistols. Ken's brother Gary, age 12, and Randall, age 16, were in the bedroom when the injury occurred. Joe Ed was conversing with Ken's brothers and did not see Ken with the pistol. Joe Ed was about four feet away from Ken when the pistol fired within a few seconds after Ken picked it up and manipulated it.
Defendants contend the pistol was defective and that Joe Ed was negligent in *711 bringing into Ken's home a loaded and defective gun which would discharge from the half-cocked position, and in not warning Ken of these risks.[1] We shall assume that the pistol was defective although the expert's conclusions in this respect were contradicted under cross-examination and the expert's factual basis for his conclusions was grossly inadequate according to our review of the testimony.
Under LSA-C.C. Art. 2317 and Loescher v. Parr, 324 So.2d 441 (La.1976), strict liability attaches when a defective thing in one person's custody causes damage to another. Loescher recognized that the liability could be avoided (1) by showing that the damage was caused by the fault of the victim; (2) by showing that the damage was caused by the fault of a third person; or (3) by an irresistible force. Had the bullet injured one of Ken Weems' brothers, Joe Ed's liability as custodian of a defective thing would probably be absolved because of Ken's lack of extraordinary care in handling the pistolfault of a third person under Loescher as we interpret that case. The owner's strict liability under LSA-C.C. Art. 2317 should not be extended to bar recovery by the owner who himself is injured by the defective thing when the fault of another and not the defect of the thing causes the injury.
The test of Joe Ed's conduct as contributory negligence barring his recovery, is to be determined by the duty-risk analysis that Joe Ed's conduct was a breach of duty to himself and constituted an unreasonable risk of harm to himself. See Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) and 34 La.L.Rev. 1, "Reason versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin and Associates, Inc." Our application of duty-risk analysis leads us to the "basic question" (to use Hill terminology as well):
Whether the risk of an injury from a defective and loaded gun which is carelessly handled by another so as to cause injury to the owner of the gun is within a rule of law which would prohibit the owner from unreasonably exposing the gun to the careless and uuinvited handling by a third person?
Our answer to the question, similarly propounded in Hill and there answered in the negative, is answered here in the negative, because (again using Hill terminology):
The record is devoid of any evidence tending to establish that plaintiff could have reasonably anticipated that a third person would carelessly handle the gun, or that such a "naked possibility" was an unreasonable risk of harm towards himself.
The record establishes that Ken and Joe Ed had hunted together for three or four years; that Ken was reasonably well versed and experienced in firearms, and that on one earlier occasion Ken had fired Joe Ed's .22 caliber pistol in question. Ken had handled firearms, including these pistols, on other occasions in Joe Ed's presence. Joe Ed had brought firearms into Ken's home before and had carried firearms in his vehicle in which Ken often rode to school and elsewhere. Ken picked up the .22 without invitation from or comment to Joe Ed.[2] We conclude there was no evidence which would have led Joe Ed to reasonably believe or anticipate that Ken would negligently and carelessly handle the pistol as he did. We reverse the jury verdict in this respect.
*712 Quantum
The medical testimony shows that the bullet entered the thoracic area, punctured Joe Ed's lung, and lodged behind the scapula. Upon admission to the hospital a tube was placed between the ribs and lung to evacuate blood and air from the thoracic cavity. Joe Ed remained in intensive care approximately forty-eight hours. After confinement in the hospital for approximately one week, Joe Ed was released to the care of his local physician. About a month after the gunshot a thoracentesis was performed to draw 450 c.c.'s of fluid from the thoracic cavity. At this time bullet fragments were removed from Joe Ed's shoulder. About five weeks later Joe Ed was released from medical care and allowed to resume activities as he was able. The medical testimony indicates that Woodward suffered no permanent functional disability.
We believe a just and fair award of damages would be $6,500. Special damages were stipulated by counsel to be $1,894.05. Judgment below is reversed, and for reasons stated:
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment against defendants, First of Georgia Insurance Company and Waymon M. Weems, individually and as administrator of the estate of his minor son, Ken Weems, in solido:
(A) In favor of Billy J. Woodward as administrator of the estate of his minor son, Joe Ed Woodward, for $6,500; and
(B) In favor of Billy J. Woodward for $1,894.05, with legal interest on all sums awarded from date of judicial demand, and at the cost of defendants, in solido, including the cost of this appeal.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the expert witness fees, as they may be agreed to by the litigants or fixed by the lower court upon plaintiff's rule be taxed as costs and paid by defendants.
Reversed and Remanded.
NOTES
[1] Defendants offered expert testimony regarding defects in the gun which was properly admitted over plaintiff's objection that it was irrelevant.
[2] Ken's initial testimony on cross-examination during plaintiff's case in chief and some of his pleadings to plaintiff's petition indicate that Ken inserted one bullet into the 22 after he picked up the pistol.