352 So.2d 351 (1977)
Joyce Faciane, wife of/and John MARTIN
v.
SOUTHERN BAPTIST HOSPITAL et al.
No. 8514.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Rehearing Denied December 13, 1977.
Writ Refused January 30, 1978.
*352 Loeb & Livaudais, Claire Loeb, New Orleans, for plaintiffs-appellants.
Monte J. Ducote, New Orleans, for defendant-appellee, Southern Baptist Hospital.
Lemle, Kelleher, Kohlmeyer & Matthews, William S. Penick, New Orleans, for defendant-appellee, New Orleans Blood Bank, Inc.
Before LEMMON, GULOTTA and SCHOTT, JJ.
GULOTTA, Judge.
Plaintiffs appeal from the dismissal of their suit for damages based on the claim that Mrs. John Martin contracted serum hepatitis from a blood transfusion required in connection with surgery received by her. Suit was directed initially against Southern Baptist Hospital. Subsequent to a third-party demand filed by the hospital against the New Orleans Blood Bank, Inc. (NOBB), plaintiffs, by supplemental petition, joined the blood bank as a party defendant. In reasons for judgment, the trial judge stated:
"The Court does not feel that the plaintiffs have carried the burden of proof as to the negligence of the defendants."
The blood in the instant case was received by the NOBB from the Interstate Blood Bank, located in Memphis, Tennessee, and was distributed by the NOBB to the Southern Baptist Hospital. Mrs. Martin received the blood from the hospital.
In this appeal, plaintiffs contend the hospital was negligent 1) in failing to conduct a test for the presence of hepatitis; 2) in relying on the "integrity" of the test conducted by the Memphis blood bank; and, 3) in participating with the NOBB in a blood plan where blood is purchased from donors.
*353 Plaintiffs further contend they are entitled to recovery under the strict liability provisions of LSA-C.C. art. 2317.[1] In this connection, the Martins rely also on the case of Loescher v. Parr, 324 So.2d 441 (La.1975) and cases following.[2]

NEGLIGENCE
At the outset, we are in agreement with the findings of the trial judge that plaintiffs failed to carry the burden of showing defendant's negligence. No showing was made that accepted medical standards were not followed in the screening and testing of the blood and in administering the blood transfusion. Interstate is a federally-licensed blood bank with the obligation to test the blood for hepatitis, as the originating bank. Plaintiff did not offer evidence to show that Interstate failed to conduct a test. As a matter of fact, defendant's attempt to introduce Interstate's records for the purpose of showing that tests had been conducted were met by an objection from plaintiffs which was sustained. Furthermore, according to the testimony of the director of the Baptist Hospital blood bank, the blood administered to Mrs. Martin was tested by the hospital for research purposes and negative findings resulted.[3]
In connection with accepted blood tests for hepatitis known to medical science in 1972, when Mrs. Martin received the transfusion, the testimony is clear that 100% accuracy was not attainable. The medical evidence in the instant case is virtually undisputed that the tests were accurate and effective only to the extent of 35-45%. Supportive of the inaccuracy of the tests was evidence that while Mrs. Martin was hospitalized at Baptist Hospital and evidencing symptoms of hepatitis, blood tests conducted at that time were negative; furthermore, in a subsequent hospitilization at Ochsner Hospital during 1973, blood tests were performed and were negative. Medical experts testifying at trial further indicated that an improved test for detecting serum hepatitis, unavailable in 1972, is only approximately 70% effective. The evidence clearly indicates that the transfused blood in the instant case was subjected to the best test available which produced negative results for serum hepatitis. Under the circumstances, we find no error in the trial court's conclusion that plaintiffs have failed to show negligence.

STRICT LIABILITY
Plaintiffs, in relying on Loescher v. Parr, supra, contend that in order to establish liability, they are required to show only 1) that defendant had custody of the blood; 2) that there was a defect or vice in the blood; and, 3) that the damage occurred through or as a result of the defect or vice. According to plaintiffs, once the above have been established, defendant can only escape liability by showing that the damage was *354 caused through plaintiffs' fault or through the fault of a third person or by some irresistible force.
Although acknowledging that "implied warranty" of fitness is not applicable to blood,[4] nevertheless, plaintiffs contend the doctrine of strict liability is applicable under LSA-C.C. art. 2317 as applied in the Loescher case. In Loescher, an automobile owner was permitted to recover for damages to his car when struck by a falling tree. The tree, located on defendant's property, was diseased but the defect was unknown to the defendant. The Supreme Court, supra, at page 446, stated:
"The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the . . . (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others."
We reject plaintiffs' contention that the Loescher case is controlling in our case. As pointed out by defendant, blood is statutorily not considered a "commodity" but is regarded as a "medical service". See LSA-C.C. art. 1764(B). This public policy statute recognizes the life-saving need for use of blood, vital in some cases. While the danger of contracting hepatitis exists in blood transfusions, medical science, in 1972, had not progressed to the point where effective, foolproof tests had been perfected to discern the presence of hepatitis. To permit the application of strict liability in these cases would effectively instill, in the medical profession, fear of the use of blood until such time as foolproof tests could be devised. Such a result is untenable.
In Juneau v. Interstate Blood Bank, Inc. of Louisiana, 333 So.2d 354 (La.App. 3d Cir. 1976), writ denied, 337 So.2d 220 (La.1976),[5] a case on all fours with the instant one, plaintiff's reliance for recovery based on strict liability was rejected. See also Koppenol v. St. Tammany Parish Hospital, 341 So.2d 1242 (La.App. 1st Cir. 1976), writ denied, 343 So.2d 1067 (La.1977); Adams v. New Orleans Blood-Bank, Inc., 343 So.2d 363 (La.App. 4th Cir. 1977).
Accordingly, we conclude that absent a showing that accepted standards in screening and testing blood and in administering blood transfusions were not followed or that hepatitis resulted from some negligent *355 act of a defendant, a plaintiff is not entitled to recover. No negligent act was shown in the instant case.
The judgment is affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Judge, concurring.
I believe that the furnishing of defective blood gives rise to a cause of action in tort based on fault. However, a plaintiff has the burden of proving that the particular blood was unreasonably unsafe for its intended use, when the risks are balanced against the benefits. Our plaintiffs have failed to prove that the risks were greater than a reasonable user would expect under the then existing circumstances considered in relation to the benefits.
NOTES
[1] LSA-C.C. art. 2317 provides as follows:

Art. 2317. Acts of others and of things in custody
"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[2] Glorioso v. Chandler, 337 So.2d 269 (La.App. 2d Cir. 1976); Woodward v. First of Georgia Insurance Co., 333 So.2d 709 (La.App. 2d Cir. 1976); dissent in Gansloser v. Kansas City Southern Railway Company, 339 So.2d 498 (La. App. 2d Cir. 1976), writ denied, 342 So.2d 219 (La. 1977).
[3] We find no merit to plaintiffs' suggestion that the documentary evidence pertaining to tests conducted by the hospital was inadmissible because of the hospital's failure to produce the original cards evidencing the fact that the tests were conducted. The hospital clearly established that the microfilmed originals could not be located after search and photocopies of the cards were introduced instead. Under these circumstances, the trial judge properly admitted evidence relating to these tests. The copies were the best documentary evidence available since the originals could not be found. See Auto for Rent, Inc. v. Provenza, 261 So.2d 732 (La.App. 2d Cir. 1971); Miley v. Steedley, 269 So.2d 522 (La.App. 1st Cir. 1972); Fidelity National Bank of Baton Rouge v. Jack Neilson, Inc., 248 So.2d 412 (La.App. 4th Cir. 1971); Alexander v. Occhipinti, 251 So.2d 188 (La. App. 4th Cir. 1971).
[4] See LSA-C.C. art. 1764, which, in pertinent part, provides as follows:

Art. 1764. Contracts; subject, motive, elements determining nature, and exceptions to implied warranty provisions
"A. All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
* * * * * *
2. Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect.
* * * * * *
B. Notwithstanding the provisions of Section A.2. of this Article, the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this Article be considered commodities subject to sale or barter but shall be considered as medical services."
[5] In Justice Tate's dissent from the denial of the writ, concurred in by Justice Dennis, he stated: "I think the defect in the blood gives rise to a cause of action for fault, La.Civil Code arts. 2313, 2317, not upon any implied warranty. See dissent in Thomas v. Gillette Co., 230 So.2d 870, 876 (La.App. 3d Cir. 1970)."