**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 02-30752**
**Summary Calendar**

_____

**GEORGE LUPO; DAWN LUPO,**

**Plaintiffs-Appellants,**

**versus**

**UNITED STATES OF AMERICA,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(01-CV-2304)**
_____

March 7, 2003

Before BARKSDALE, DEMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (FTCA), George Lupo and Dawn Lupo, his wife, filed suit against the United States for damages, claiming Mr. Lupo received negligent medical treatment at the New Orleans Veterans Administration Medical Center (Center). The Lupos allege: Mr. Lupo was diagnosed with hepatitis C in 2000, resulting from his receiving defective blood at the Center *in 1966*. They contend that the Center was

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

negligent because it failed to properly test the donated blood administered to Mr. Lupo or to warn him that the blood had not been tested. The district court granted summary judgment to the Government, holding that the Center did not owe a duty to Mr. Lupo either to perform a specific test for hepatitis, or to warn him about the risk of contracting hepatitis C.

A summary judgment is reviewed *de novo*, using the same standard applicable in the district court. *E.g.,* **Melton v. Teachers Ins. & Annuity Ass'n of America**, 114 F.3d 557, 559 (5th Cir. 1997). Under the FTCA, the United States is liable for its torts if a private person would be liable for the same act or omission under local laws. 28 U.S.C. §§ 1346(b), 2674. *See* **Tindall v. United States**, 901 F.2d 53, 55 (5th Cir. 1990). Because the claimed medical malpractice occurred in Louisiana, its law controls. **Tindall**, 901 F.2d at 55.

Under that law, a hospital must "protect a patient from ... external circumstances peculiarly within the hospital's control". **Hunt v. Bogalusa Cmty. Med. Ctr.**, 303 So.2d 745, 747 (La. 1974). *See also* **Hemingway v. Ochsner Clinic**, 608 F.2d 1040, 1049 (5th Cir. 1979). Louisiana cases have consistently held the duty of a blood bank is to: "screen[ ] donors and test[ ] blood in accordance with the latest accepted guidelines in effect at th[e] time", and "follow[ ] the normal accepted procedures in administering the blood". **Juneau v. Interstate Blood Bank, Inc. of Louisiana**, 333

So. 2d 354, 356 (La. Ct. App.), *cert. denied*, 337 So. 2d 220 (La. 1976).  *See also* **Chauvin v. Sisters of Mercy Health Sys., St. Louis, Inc.**, 818 So. 2d 833, 846-47 (La. Ct. App.), *cert. denied*, 825 So. 2d 1194 (La. 2002); **Martin v. Southern Baptist Hosp.**, 352 So. 2d 351, 353 (La. Ct. App. 1977), *cert. denied*, 354 So. 2d 210 (La. 1978).

The Government established that it was not until 1986, 20 years after the transfusion at issue, that blood banks in the United States began routinely testing donated blood to determine whether it might be tainted with the hepatitis virus.  The Lupos failed to carry their burden of showing that, in 1966, hospitals were either performing or were required to perform any particular test for hepatitis on donated blood, either under the "accepted guidelines in effect at that time" and/or "the normal accepted procedures" followed by hospitals. **Juneau**, 333 So. 2d at 356.  The Lupos also failed to prove that, in 1966, hospitals were warning or were required to warn their patients about the risk of contracting hepatitis from infected blood.  *See* **Chauvin**, 818 So. 2d at 845.

**AFFIRMED**

3